IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

THORNTON STORAGE, LLC,

    Plaintiff,

       v.

READY MIX USA, LLC,

    Defendant.

CIVIL ACTION FILE
NO. 1:23-CV-1701-TWT

## OPINION AND ORDER

This is a property damage case. It is before the Court on Defendant Ready Mix USA, LLC ("Ready Mix")'s Motion to Exclude the Testimony of Jesse Cole [Doc. 42], Ready Mix's Motion to Exclude the Testimonies of Blake Lemcke and Charles Barnes [Doc. 43], and Ready Mix's Motion for Summary Judgment [Doc. 44]. As explained below, Ready Mix's Motion to Exclude the Testimony of Jesse Cole [Doc. 42] is GRANTED, Ready Mix's Motion to Exclude the Testimonies of Blake Lemcke and Charles Barnes [Doc. 43] is GRANTED, and Ready Mix's Motion for Summary Judgment [Doc. 44] is DENIED.

### I.    Background[1]

This case involves a property dispute in which one property owner's

---

[1] The operative facts on the Motion for Summary Judgment are taken from the parties' Statements of Undisputed Material Facts and the responses thereto. The Court will deem the parties' factual assertions, where supported by evidentiary citations, admitted unless the respondent makes a proper objection under Local Rule 56.1(B).

actions are allegedly causing cementitious slurry and process water to flow onto another's property. Plaintiff Thornton Storage, LLC owns the property at 426 North Thornton Ave, Dalton, GA 30720. (Def.'s Statement of Undisputed Material Facts ¶ 1). There, it operates a public storage business. (*Id.*). Defendant Ready Mix owns the property located at 419 North Selvidge St., Dalton, GA 30720. (*Id.* ¶ 20). Ready Mix operates a concrete batch plant on that property. (*Id.* ¶ 22).

"The process water [Ready Mix] utilizes in its operations flows through a series of settling pits, where it can be recycled for continued use. Wastewater is ultimately discharged via a pipe that connects to the Dalton Utilities' sanitary sewer system." (*Id.* ¶ 23). Ready Mix's property is generally at a higher elevation than Thornton Storage's property. (*Id.* ¶ 21). On September 30, 2021, Thornton Storage sent Ready Mix a letter stating, "[d]uring rain events, runoff from the Ready Mix property flows onto my client's property." (1st Cease-and-Desist Letter, [Doc. 50-2]). In addition to flowing onto Thornton Storage's property above ground, the letter complains that "the cement and sediment is draining into underground stormwater pipes on my client's property and constricting the flow of water through them." (*Id.*). Ready Mix had known of another discharge-related complaint at least as far back as October 25, 2018. (Ready Mix Dep., [Doc. 44-17], at 92:10-22). Unsatisfied with the results of the first letter, Thornton Storage

sent a second letter on April 27, 2022, reiterating that "the operation of the Plant . . . is damaging and interfering with the use and enjoyment of [Thornton Storage's] property." (2d Cease-and-Desist Letter, [Doc. 50-3]). It then states that "since Ready Mix has failed to abate this trespass and nuisance, Thornton Storage, LLC will proceed with legal action to enjoin the continuing trespass and nuisance caused by the operation of the Ready Mix plant." (*Id.*). Thornton Storage then filed this action in the Superior Court of Cobb County on November 23, 2022. (*See* Compl., Doc. 1-1). The action was removed to this Court on April 17, 2023. Ready Mix now moves to exclude three experts proffered by Thornton Storage and moves for summary judgment as to all counts.

## II.    Legal Standard

### A. *Daubert* Standard

"Under Federal Rule of Evidence 702, expert testimony is admissible if (1) the expert is qualified to testify regarding the subject of the testimony; (2) the expert's methodology is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) the expert's testimony will assist the trier of fact in understanding the evidence or determining a fact at issue." *Chapman v. Procter & Gamble Distrib., LLC*, 766 F.3d 1296, 1304 (11th Cir. 2014). The Federal Rules of Evidence require a district judge to take on a gatekeeping function to "ensure that any and all scientific testimony or

3

evidence admitted is not only relevant, but reliable." *Daubert v. Merrill Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993). "In considering the proffered expert testimony, a trial judge is mindful the burden of establishing qualification, reliability, and helpfulness rests on the proponent of the expert opinion." *Chapman*, 766 F.3d at 1304 (quotation marks and punctuation omitted).

### B. Summary Judgment Standard

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show that no genuine issue of material fact exists, and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a), (c). The court should view the evidence and draw any inferences in the light most favorable to the nonmovant. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970). The party seeking summary judgment must first identify grounds that show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). The burden then shifts to the nonmovant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact exists. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986).

### III.    Discussion

The Court will start by addressing Ready Mix's Motions to Exclude and then turn to its Motion for Summary Judgment.

### A. Jesse Cole Testimony

Ready Mix argues that the testimony of Thornton Storage's purported expert Jesse Cole should be excluded for several reasons. First, it argues that Cole's report does not comply with Federal Rule of Civil Procedure 26. (Def.'s Br. in Supp. of Mot. to Exclude Cole Testimony, at 9-11). Second, Ready Mix contends that Cole is not qualified to be an expert under Federal Rule of Evidence 702. (*Id.* at 11-14). Lastly, it asserts that Cole's opinions are unreliable and unhelpful under *Daubert*. (*Id.* at 14-25). The Court agrees that exclusion of Cole's testimony is appropriate in this case.

The Court focuses its analysis on the reliability and helpfulness of Cole's analysis in this case. When it comes to reliability, *Daubert* provides a flexible and non-exhaustive list of factors to consider: (1) whether an expert's theory or technique can be tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error of a scientific technique; and (4) whether a known technique has achieved widespread acceptance in the scientific community. *Daubert*, 509 U.S. at 593-94. "Whether *Daubert*'s specific factors are, or are not, reasonable measures of reliability in a particular case is a matter that the law grants the trial judge broad latitude to determine." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 153 (1999) (citation omitted).

Ready Mix challenges the reliability of Cole's methodology in various ways. First, Ready Mix complains that "Cole's opinion that 'concrete slag' exists in the stormwater pipes is based entirely on his review of video taken by others." (Def.'s Br. in Supp. of Mot. to Exclude Cole Testimony, at 15). It points out statements in Cole's deposition in which he states that he did not remove any material from the pipe, did not pick up any of the material, and did not arrange for it to be tested. (*Id.*). As for testing by others, he testified that he "glanced at it the other day" but "wouldn't say [he] reviewed it." (Cole Dep., [Doc. 42-1], at 39:16-25). Accordingly, he did not know where the sample from that testing came from and only assumed that it came from one of two sections in the pipes. (*Id.* at 40:1-5).

Second, Ready Mix contests Cole's opinion that the material in the stormwater pipes originated from Ready Mix. (Def.'s Br. in Supp. of Mot. to Exclude Cole Testimony, at 16-19). When Cole was asked how he came to that conclusion, he responded, "[w]ell, it's in the pipes downstream from where the Ready Mix overflow is and it's not in the pipes upstream. Pretty straightforward." (Cole Dep., at 39:3-9). When asked for his opinion as to how the concrete material got from Ready Mix into the stormwater system, Cole answered that he "presume[s]" that fine material in the water deposits and builds layer by layer. (*Id.* at 40:6-15). Ready Mix faults this methodology for not considering alternative explanations for the existence of concrete slag

6

downstream from Ready Mix, including: (1) the fact that the pipe's composition changes at that point from concrete to corrugated metal, which has a greater tendency to pick up debris; (2) the fact that the stormwater pipe at that point has a reverse grade, which causes that section of the pipe to hold water and could lead to increased concrete slag accumulation; and (3) the fact that the pipe upstream was in better condition, suggesting that it was newer and did not have as much time to accrue debris. (Def.'s Br. in Supp. of Mot. to Exclude Cole's Testimony, at 17-18). Each of these facts was acknowledged by Cole. (Cole Dep., at 58:1-15, 66:2-67:5, 80:16-81:8). Ready Mix states that "[b]ecause Cole used no methodology to rule out other potential sources of concrete and other reasons for concrete debris downstream of RMUSA, his opinion that RMUSA is the source is not based on science." (Def.'s Br. in Supp. of Mot. to Exclude Cole's Testimony, at 19). Relatedly, Ready Mix objects to the fact that Cole never states what proportion of the debris is from Ready Mix and what proportion is from other sources, assertedly making the testimony as unhelpful as it is unreliable. (*Id.* at 21-24).

Third, Ready Mix challenges Cole's opinions on Ready Mix's process water management system because Cole "made no effort to educate himself on the system's design and, as a result, draws incorrect deductions that render his conclusions entirely unhelpful." (*Id.* at 19-20). Ready Mix alleges

that Cole (1) failed to measure the wall surrounding the settling ponds despite opining that it is not high enough, (2) did not review Ready Mix's wastewater discharge permit with Dalton Utilities, (3) did not review Ready Mix's discharge monitoring reports, (4) does not know how much water Ready Mix is capable of discharging into Dalton Utilities, and (5) opined that Ready Mix's system is designed to overflow onto Thornton Storage's property even though Ready Mix's representative said it was designed to overflow into the onsite pit containing a conveyor belt. (*Id.* at 20)

Finally, Ready Mix questions Cole's opinion as to damages. Cole's initial estimate of damages was $390,000 in February 2023. (Def.'s Br. in Supp. of Mot. to Exclude Cole's Testimony, Ex. E, Doc. 42-5). Then, in June 2023, his revised estimated was a range between $486,000 and $1,246,060. (*Id.*). Ready Mix asserts that there is "little basis for his cost estimates" and that they are therefore too "imprecise and unscientific" to be helpful to the trier of fact. (Def.'s Br. in Supp. of Mot. to Exclude Cole's Testimony, at 25 (citation omitted)).

In response to Ready Mix's various challenges to the reliability and helpfulness of Cole's testimony, Thornton Storage does not explain any particular methodology employed by Cole or cite to any legal authority. Instead, the main thrust of its Response is that "there is nothing complicated about how [Cole] arrived at his opinion," that his opinion is "straightforward[]

and cannot be seriously disputed by Ready Mix," and that his conclusions are based on "readily observable conditions." (Pl.'s Br. in Opp'n to Mot. to Exclude Cole's Testimony, at 11-12). Thornton Storage even goes so far as to say that "it is difficult to conceive of how any reasonable juror could come to a conclusion different from that of Mr. Cole." (*Id.* at 11). In other words, Cole's testimony is reliable because it is obvious. This argument runs into two problems. For starters, it is not a very convincing argument for reliability. *See, e.g.*, Fed. R. Evid. 702 advisory committee note to 2000 amendments ("The trial court's gatekeeping function requires more than simply 'taking the expert's word for it.'" (citation omitted)); *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 43 F.3d 1311, 1319 (9th Cir. 1995) ("We've been presented with only the experts' qualifications, their conclusions and their assurances of reliability. Under *Daubert*, that's not enough."); *Jones Creek Invs., LLC v. Columbia Cnty., Ga.*, 2014 WL 12618171, at *7 (S.D. Ga. Oct. 29, 2014) ("No matter how obvious these two conclusions may appear to Dr. Wear, they remain personal opinions unsupported by empirical evidence.").

In addition to being an unpersuasive argument for the reliability of his testimony here, it runs headlong into the first element under Federal Rule of Evidence 702. Fed. R. Evid. 702 (permitting an expert to testify in the form of an opinion if the proponent meets their burden that, *inter alia*, "the expert's scientific, technical, or other specialized knowledge will help the trier of fact

to understand the evidence or to determine a fact in issue."). Namely, if Cole's conclusions and how he arrived at them are so obvious that any reasonable juror would come to the same conclusion as him, how would his testimony assist the jury in understanding the evidence? Thornton Storage does not say.

There is one final argument to which the Court responds. With respect to Ready Mix's argument that Cole's testimony does not delineate how much of the debris in the stormwater pipes was contributed by Ready Mix, Thornton Storage answers: "That the Ready Mix slurry is not the sole cause of the flooding on Plaintiff's property does not excuse this conduct or give Ready Mix permission to continue to fail to contain the slurry on its own property." (Pl.'s Br. in Opp'n to Mot. to Exclude Cole's Testimony, at 14). Thornton Storage provides no case or statute for this proposition. However, even taking this statement as true, the helpfulness of this testimony is greatly lessened if Cole is unable to state whether Ready Mix's contribution is substantial or *de minimis*. The less significant the contribution, the more difficult it will be for Thornton Storage to show that any damage it suffered was caused by Ready Mix's actions. Yet, Cole's testimony fails to assist the jury in determining how much Ready Mix contributed.[2]

All in all, the Court finds that Cole's testimony discussed above is unreliable, unhelpful, or both. Thornton Storage does not point to—and Cole's

---

[2] Moreover, even if Cole's statement is helpful, Thornton Storage still fails to overcome the reliability issues addressed above.

expert report does not contain—any other opinions that Cole plans to offer that may pass muster. The Court therefore grants the Motion to Exclude his testimony in full.[3]

## B. Blake Lemcke and Charles Barnes Testimony

Thornton Storage has disclosed both Blake Lemcke and Charles Barnes as experts related to testing of concrete slurry that was removed from the relevant stormwater pipes. (2d Am. To Pl.'s Initial Disclosures and to Pl.'s Resps. To Def.'s 1st Interrogs., [Doc. 43-5], at 4-5). Ready Mix moves to exclude the proffered experts' testimony because the disclosures were deficient and because the testimony is irrelevant and unreliable. (Def.'s Br. in Supp. of Mot. to Exclude Lemcke and Barnes's Testimony, at 4-12). The Court finds exclusion is appropriate.

Starting with Lemcke, the Court finds that he has not been properly disclosed and will exclude his testimony accordingly. Federal Rule of Civil Procedure 26 divides expert witnesses into two camps: retained experts and non-retained experts. Fed. R. Civ. Pro. 26(a)(2). Retained experts must provide a written report that the witness prepared and signed and contains certain required information. Fed. R. Civ. Pro 26(a)(2)(B). Non-retained experts need only disclose the subject matter over which the witness will

---

[3] Because the Court grants the Motion in full on unreliability and unhelpfulness grounds, the Court declines to address Ready Mix's other arguments.

provide expert testimony and a summary of the facts and opinions to which the witness will testify. Fed. R. Civ. Pro. 26(a)(2)(C). The Eleventh Circuit has recently explained that whether an expert witness is retained or non-retained

> depend[s] on when and why an expert witness was hired. A retained expert witness typically will get involved in a case to provide expert testimony and will derive her knowledge of the case from preparation for trial. A non-retained witness, on the other hand, will have at least some first-hand factual awareness of the subject matter of the suit.

*Cedant v. United States*, 75 F.4th 1314, 1324 (11th Cir. 2023) (footnote omitted).

Here, Lemcke has no first-hand factual awareness of the subject matter. Thornton Storage itself describes the facts as such:

> As is clear and undisputed from the evidence, Mr. Hardin collected samples from the Stormwater Pipes. He gave them to Mr. Barnes and Mr. Barnes and his colleague sent the samples out for testing. Mr. Lemcke did the testing, prepared a report and sent the report to Mr. Barnes' colleague, Mr. Wharton. Mr. Wharton forwarded the report back to Mr. Hardin.

(Pl.'s Br. in Opp'n to Mot. to Exclude Lemcke and Barnes's Testimony, at 5). Lemcke was never on site himself and instead simply analyzed samples that were submitted to his lab. *See Sanford v. Russell*, 2019 WL 2051986, at *8 (E.D. Mich. May 9, 2019) ("Steiner's involvement was entirely post-hoc when materials collected from the scene by others were submitted to him for laboratory testing in the course of the investigation. The defendants were

12

obligated under Rule 26(a)(2)(B) to produce a full report authored by Steiner."). Moreover, that sample was provided to him on October 5, 2022. (P003894 Lab Report, [Doc. 43-4], at 1). This is over five months after Thornton Storage sent Ready Mix its second cease-and-desist letter stating, "since Ready Mix has failed to abate this trespass and nuisance, Thornton Storage, LLC will proceed with legal action to enjoin the continuing trespass and nuisance caused by the operation of the Ready Mix plant." (2d Cease-and-Desist Letter, [Doc. 50-3]). This persuasively indicates to the Court that Lemcke got "involved in [this] case to provide expert testimony and will derive h[is] knowledge of the case from preparation for trial" and is therefore a retained expert requiring a written report. *Cedant*, 75 F.4th at 1324.

Thornton Storage contends otherwise: "[N]either Mr. Barnes nor Mr. Lemcke is an expert retained to testify in this case; consequently, Plaintiff was not required to provide a written report as described in Fed. R. Civ. P. 26(a)(2)(B)." (Pl.'s Br. in Opp'n to Mot. to Exclude Lemcke and Barnes's Testimony, at 4). This is the entirety of Thornton Storage's argument on the point. [4] It provides no reasoning or citation for how it arrived at that

---

[4] A little later in the Response, Thornton Storage states a virtually identical sentence: "Neither Mr. Barnes nor Mr. Lemcke was retained or specially employed to provide expert testimony within the meaning of Fed. R. Evid. 702, 703, and 705, and therefore their testimony is not subject to the written report requirements of Rule 26(a)(2)." (Pl.'s Br. in Opp'n to Mot. to

conclusion. Rather, Thornton Storage appears to believe that it can make Lemcke a non-retained expert simply by saying so. Thornton Storage is incorrect.

Thornton Storage also argues that even if Lemcke is a retained expert who requires a written report, the lab report that he submitted satisfies that requirement. (Pl.'s Br. in Opp'n to Mot. to Exclude Lemcke and Barnes's Testimony, at 6). Thornton Storage is incorrect again. Under Rule 26, a written report "*must* contain," *inter alia*, "(iv) the witness's qualifications, including a list of all publications authored in the previous 10 years; (v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and (vi) a statement of the compensation to be paid for the study and testimony in the case." Fed. R. Civ. Pro. 26(a)(2)(B) (emphasis added). The lab report fails to provide any of this information. (*See generally* P003894 Lab Report, Doc. 43-4). Thornton Storage argues that because "[Lemcke] prepared a Report that contains his conclusions and Ready Mix's ability to learn his opinions during discovery has not been hindered," its disclosure was sufficient. (Pl.'s Br. in Opp'n to Mot. to Exclude Lemcke and Barnes's Testimony, at 6). However, Thornton Storage provides no legal authority for this position, and the language of Rule

---

Exclude Lemcke and Barnes's Testimony, at 5). The Court does not see any meaningful difference in this statement. It is similarly just a bald-faced denial that Lemcke (or Barnes) is a retained expert.

26 is crystal clear. An expert report "*must* contain" all of the information listed under the Rule, and the lab report does not. The fact that it provides some of the information is inapposite. Close is not close enough. *See Cooper v. Southern Co.*, 390 F.3d 695, 728 (11th Cir. 2004) ("[C]ompliance with the requirements of Rule 26 is not merely aspirational."), *overruled on other grounds by Ash v. Tyson Foods, Inc.*, 546 U.S. 454, 457-58 (2006).[5] Pursuant to Federal Rule of Evidence 37(c)(1), the Court will exclude Lemcke's testimony for failure to comply with Federal Rule of Civil Procedure 26.

Turning to Barnes, Thornton Storage states, "Mr. Barnes is not expected to provide opinion testimony, nor has he been specially retained to provide expert testimony. He has not been hired by Plaintiff or its counsel and he will not be paid for any testimony, and he is expected to testify solely on the issue of chain of custody for the samples." (Pl.'s Br. in Opp'n to Mot. to Exclude Lemcke and Barnes's Testimony, at 5-6). Moreover, this statement appears under the heading "Mr. Barnes will not provide expert testimony and Plaintiff produced a Report from Mr. Lemcke." (*Id.* at 4). The Court will construe this as Thornton Storage withdrawing Barnes as an expert witness.

---

[5] Notably, Thornton Storage's argument is that it satisfied the requirements of Rule 26. It never argues that the failure to comply with Rule 26 was harmless or substantially justified (and thereby not requiring exclusion under Rule 37). Even if it had, the fact that Ready Mix had the deficient report for almost a year and "had ample time and opportunity to prepare a defense to this evidence" does not render the deficiencies of the report substantially justified or harmless. (Pl.'s Br. in Opp'n to Mot. to Exclude Lemcke and Barnes's Testimony, at 6).

Because Barnes will not be offered as an expert, his testimony will not be excluded for failure to provide an expert report. However, since the Court is granting Ready Mix's Motion to Exclude as to Lemcke, Barnes's testimony as to the chain of custody of the sample to Lemcke is no longer relevant. *See* Fed. R. Evid. 401. His testimony will therefore be excluded under Federal Rule of Evidence 402.

### C. Summary Judgment

As for the Motion for Summary Judgment, there is some confusion among the parties about what this dispute is even about. In the initial brief, Ready Mix states, "Plaintiff's chief complaint – that RMUSA's operations have contributed to the buildup of 'concrete slag' in the stormwater pipes, reducing their capacity and causing flooding – is entirely unsupported with the admissible record evidence." (Def.'s Br. in Supp. of Mot. for Summ. J., at 3). In its Response, Thornton Storage answers, "[c]ontrary to the characterization presented by Ready Mix, the issue here is not the flooding per se. The issue is Ready Mix's repeated deposition of effluent, cementitious slurry, and process water on the Thornton Property." (Pl.'s Br. in Opp'n to Mot. for Summ. J., at 2). This seems to include cementitious slurry going into the stormwater pipe as well as flowing under the fence that divides the properties. (*Id.* at 4) ("Significant amounts of this cementitious sediment and slurry has migrated into the Stormwater Pipes on Plaintiff's property and

restricted their flow."); (*Id.* at 16) ("Ready Mix cannot deny or dispute that these materials emanated from its property and it even includes a picture of the cement slurry and acknowledges that it was located along the fence next to the Settling Pits on its property." (citations omitted)). Thornton Storage "also objects to Ready Mix's placement of a permanent drainage pipe surrounded by concrete blocks on its property without permission, and its failure and refusal to remove the pipe, despite demand." (*Id.* at 4). Ready Mix bemoans this last addition as part of Thornton Storage's "continual revision of its allegations" but, regardless, asserts that none of the asserted nuisances or trespasses establish the elements of Thornton Storage's claims. (Reply Br. in Supp. of Mot. for Summ. J., at 2). The Court will address each of the asserted bases for Thornton Storage's claims to assess whether there is a genuine issue of material fact.

### i.   Drainage Pipe Placement

The Court begins its analysis by considering Thornton Storage's objection to Ready Mix's placement of a permanent drainage pipe that is assertedly on its property. Having reviewed the Complaint, the Court sees nothing in it that would provide any notice to the Defendant about this issue.[6] The Complaint alleges that Ready Mix's "washout pond routinely

---

[6] Nor, for that matter, is it referenced in either of the cease-and-desist letters. (*See* 1st Cease-and-Desist Letter, [Doc. 50-2]; 2d Cease-and-Desist Letter, [Doc. 50-3])

overflows, particularly during rain events, causing this runoff to flow onto Thornton Property." (Compl. ¶ 8). It further asserts that "Cement mix and slurry is not only deposited on the parking and asphalt areas of the Thornton Property, but also flows and accumulates in the underground storm water pipes on the Thornton Property." (*Id.* ¶ 9). The Complaint makes no reference whatsoever to a permanent drainage pipe unlawfully placed on its property. "It is axiomatic that in civil actions, the complaint frames the case." *Martin v. Metro. Atlanta Rapid Transit Auth.*, 2022 WL 2304612, at *3 (N.D. Ga. June 24, 2022). To the extent that Thornton Storage argues that its claims should survive on this basis, the argument exceeds the frame of the Complaint. Moreover, "[a] plaintiff may not amend her complaint through argument in a brief opposing summary judgment." *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004) (citation omitted). Consequently, the Court will not rely on this new theory of liability in ruling on the motion.

### ii.    Stormwater Pipe Buildup

Turning to the next issue, the Court has already excluded Thornton Storage's experts that purported to connect the debris in the stormwater pipes to Ready Mix. Ready Mix argues that this alone is sufficient to grant summary judgment on causation grounds. (Def.'s Br. in Supp. of Mot. for Summ. J., at 5-7). The Court agrees, at least to the extent that Thornton Storage's claims are based on the accumulation of cement slurry in the

stormwater pipes. When an issue is outside the understanding of a lay jury, expert testimony is critical to survive summary judgment. *See, e.g.*, *Worsham v. A.H. Robins Co.*, 734 F.2d 676, 685 (11th Cir. 1984) ("It is true that there are cases in which a case would fail without expert testimony because the technical and scientific aspects of the case would result in a jury's inability to comprehend the issues."); *Burchfield v. CSX Transp., Inc.*, 2009 WL 1405144, at *11 (N.D. Ga. May 15, 2009) (finding that expert testimony is required to establish the applicable standard of care because "the facts and issues in this case require a more technical and specialized knowledge than exists in common understanding.").

In *Ramsey v. Consol. Rail Corp.*, 111 F. Supp. 2d 1030, 1031 (N.D. Ind. 2000), the plaintiff argued "her liver was damaged by drinking well water contaminated by releases of hazardous substances at a rail yard." After excluding one of the plaintiff's experts on reliability grounds, the court there held:

> The paths of contaminants as they leech though [sic] underground aquifers [is] not within the purview of laypersons' understanding, and requires expert testimony to explain. Even considering all other facts in the light most favorable to the plaintiff, the loss of Dr. Haitjema's testimony leaves the plaintiffs unable to establish a causal link between the Conrail railyard and Amanda Ramsey's illness.

*Id.* at 1038. Similarly here, how materials move through and/or accumulate onto stormwater pipes is not something within the ken of the average lay

person. This is especially true given the specifics of this case, such as the reverse grade and the different types of pipes existing in the pipe system. Because Thornton Storage's experts on the matter have been excluded, there is no causal link between the slurry that is in the stormwater pipes and Ready Mix. Being that "[c]ausation is an essential element of nuisance, trespass, and negligence claims," the Court finds that Thornton Storage cannot maintain its claims on the basis of slurry accumulation in the stormwater pipes. *Toyo Tire N. Am. Mfg., Inc. v. Davis*, 299 Ga. 155, 158 (2016) (citation omitted).[7]

### iii.   Fence Spills

The Court thus turns to the final basis for liability. It is hardly disputable that there is a material[8] spilling from Ready Mix's property onto Thornton Storage's Property. In fact, Ready Mix has attached a few photographs of overflow crossing the fence line into Thornton Storage's property. (Def.'s Br. in Supp. of Mot. for Summ. J., [Doc. 44-28], Ex. W). Ready Mix relies on two arguments for why they are not liable for this overflow. First, Ready Mix argues that this overflow cannot constitute a

---

[7] Because the Court finds that there is no evidence of causation, the Court does not address Ready Mix's arguments related to ownership of the stormwater pipes or related to damages.

[8] There does seem to be some dispute as to what the material is. However, whether it is "cementitious material" (as Thornton Storage describes it) or "putty-like material" (as Ready Mix describes it) is not dispositive on either count.

nuisance because it would not be an inconvenience to a reasonable person. (Def.'s Br. in Supp. of Mot. for Summ. J., at 14-15). Second, it contends that this overflow cannot constitute a trespass because it is not the result of an intentional act. (*Id.* at 15-16). The Court address each argument below.

Starting with Ready Mix's first argument, what constitutes a nuisance "defies any exact or comprehensive definition . . . but it does have some core requirements." *Blondell v. Courtney Station 300 LLC*, 362 Ga. App. 1, 14 (2021) (quotation marks and citation omitted). For example, "the hallmark of a nuisance claim is some invasion of the plaintiff's interest in land." *Id.* (citations omitted). "Although 'nuisance' is defined broadly in our Code as 'anything that causes hurt, inconvenience, or damage to another[,]' that 'hurt' or 'damage' must 'arise[ ] from acts which affect the land itself.'" *Id.* (citations omitted). "A plaintiff in a nuisance action may recover for property damage or personal injuries, but not without first establishing 'a real and appreciable interference with the plaintiff's use and enjoyment of his land.'" *Id.* (citations omitted); *see also* O.C.G.A. § 41-1-1 ("The inconvenience complained of [in a nuisance claim] shall not be fanciful, or such as would affect only one of fastidious taste, but it shall be such as would affect an ordinary, reasonable man.").

Ready Mix cites to one case—*Holman v. Athens Empire Laundry Co.*, 149 Ga. 345 (1919)—to support its position that summary judgment should

be granted. As Ready Mix points out, the court there stated that "the defendant may make use of its property" so long as it does not do so "to the sensible inconvenience and discomfort of plaintiff's tenants, or to the actual, tangible, and substantial injury of plaintiff's realty." *Id.* Immediately after that statement, the court states, "[w]hether a nuisance in fact existed, in the circumstances of this case, was at least a question of fact for the jury." *Id.* (citation omitted). The Court finds the same is true here. There is a substance that is overflowing from Ready Mix's property onto Thornton Storage's property. (*See* Def.'s Br. in Supp. of Mot. for Summ. J., Doc. 44-28, Ex. W). Whether a reasonable person would find that an inconvenience or not is not an issue that can properly be determined by the Court at this stage in the litigation. Thus, the Court will deny Ready Mix's Motion for Summary Judgment with respect to the nuisance claim.[9]

Turning to Ready Mix's second argument, "[a] trespass is any wrongful, continuing interference with a right to the exclusive use and benefit of a property right." *Lanier v. Burnette*, 245 Ga. App. 566, 570 (2000) (citations omitted). "[T]he act of trespass must have been a voluntary, intentional act in that it intended the immediate consequences of the act, causing the trespass or invasion, i.e., an intended act as opposed to a

---

[9] The Court clarifies that the nuisance count survives only with respect to the overflow described in this subsection. Thornton Storage may not continue to pursue this claim on the basis of the drainage pipe placement or the accumulation of materials in the stormwater pipe.

negligent act." *Id.* (citations omitted).

Ready Mix argues that "Plaintiff has not shown [Ready Mix] intended those materials to enter Plaintiff's property." (Def.'s Br. in Supp. of Mot. for Summ. J., at 16). Ready Mix points to two cases as examples of claims that failed on this ground. (*Id.*). In *Pers. Concierge MD, LLC v. SG Echo. LLC*, 368 Ga. App. 720, 729 (2023), the plaintiff argued that the landlord's failure to remediate mold after the tenant told the landlord to do so constituted an intentional act because "Landlord intended continued mold growth above and into the Premises." The court affirmed a grant of summary judgment to the landlord because "there is nothing to suggest that the Landlord intended to maintain or promote mold growth through its actions." *Id.*  However, unlike mold which spawns and grows naturally, there is no argument that the material at issue here is naturally occurring. If that material is process water and/or other known byproducts of Ready Mix's operations, then Ready Mix did intend to create the material, which distinguishes this case from *Pers. Concierge*.

Ready Mix's second case—*AMAC Two, LLC v. Web, Ltd.*, 370 Ga. App. 119 (2023)—does not fare better. There, one of the plaintiffs entered into a licensing agreement with the U.S. Postal Service for the exclusive use of parking spaces. *Id.* at 131. The defendant also leased parking spaces from the Postal Service in the same lot. *Id.* at 132. There might have been some

overlap between the parties' leases with the Postal Service. *Id.* The defendant's contractor resurfaced and striped the defendant's parking lot as well as a portion of USPS's parking lot, which included some of the plaintiff's exclusive parking spaces. *Id.* The plaintiff asserted a trespass claim as a result. *Id.* The court affirmed a grant of summary judgment because, *inter alia*, (1) there was no evidence that the defendant directed its contractor to perform maintenance on those spots and (2) there was no evidence that the defendant knew those spots were leased by the plaintiff at the time in light of the fact that the plaintiff's "license on its face was expired, and [the defendant] also had a contract with USPS to lease parking spaces in the USPS lot (a contract that may have overlapped with [the plaintiff's])." *Id.* at 133.

Here, there is no third party involved, and there is no dispute that Ready Mix knew that Thornton Storage owned the property next to Ready Mix. Ready Mix knew about complaints of overflow as far back as October 2018. (Ready Mix Dep., Doc. 44-17, at 92:10-22). Thornton Storage sent a cease-and-desist letter on September 30, 2021 describing overflow onto Thornton Storage's property. (*See* 1st Cease-and-Desist Letter, [Doc. 50-2]). Apparently, despite being told multiple times that it was spilling overflow onto the adjoining property, it continued to happen as evidenced by pictures taken on October 25, 2023 that depict material flowing into Thornton

Storage's property.[10] (*See* Def.'s Br. in Supp. of Mot. for Summ. J., Doc. 44-28, Ex. W). Viewing the facts in the light most favorable to Thornton Storage, a reasonable jury could find that Ready Mix was aware that it was spilling materials onto Thornton Storage's property, that it decided to continue doing so despite the complaints, and that it thereby formed an intent to spill materials onto Thornton Storage's property. Accordingly, the Court will reject Ready Mix's argument and deny its Motion for Summary Judgment as to the trespass claim.[11]

### iv.    Derivative Claims

Thornton Storage makes claims for injunctive relief and attorney's fees along with its substantive claims. (Compl. ¶¶ 21-26). Ready Mix argues that all substantive claims should be dismissed and that the derivative claims should be dismissed with them. (Def.'s Br. in Supp. of Mot. for Summ. J., at 13). However, as the Court stated above, Thornton Storage's nuisance and trespass claims survive summary judgment, so this does not provide a reason to dismiss the derivative claims.

---

[10] This gets to another difference between this case and *AMAC Two*. Here, the claim is for a continuing trespass as opposed to a single instance of a trespass.

[11] As with the nuisance claim, the trespass claim only survives as to this theory. Thornton Storage may not continue to pursue this claim on the basis of the drainage pipe placement or the accumulation of materials in the stormwater pipe.

Ready Mix also asserts that the claim for injunctive relief should not be permitted to proceed to the extent that Thornton Storage is requesting that Ready Mix remove concrete slag from the stormwater pipes. (*Id.* at 13-14). Since the Court is not permitting Thornton Storage to proceed on its stormwater pipe theory of its claims, the Court agrees that such a remedy would be inappropriate. However, that is not a reason to dismiss the claim at this point since Thornton Storage has an alternative theory that does survive summary judgment. *See Pope v. Pulte Home Corp.*, 246 Ga. App. 120, 120 (2000) (citation omitted) ("If there is a continuing trespass, it may be enjoined in equity.").

Finally, Ready Mix argues that the claim for attorney's fees should be dismissed because there is no evidence of bad faith. (*Id.* at 17-19). Georgia law provides that a jury may only allow litigation expenses as a part of the damages (1) "where the plaintiff has specially pleaded and has made prayer therefor" and (2) "where the defendant has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense." O.C.G.A. § 13-6-11. "[G]enerally the question of bad faith is for the jury, to be determined from its consideration of the facts and circumstances in the case." *Rouse v. City of Atlanta*, 353 Ga. App. 542, 549 (2020) (citation omitted); *see also LaRoche Indus., Inc. v. AIG Risk Mgmt., Inc.*, 959 F.2d 189, 193 (11th Cir. 1992) (explaining that Georgia law "places the question of

attorneys' fees within the province of the jury and provides that the court should not vacate such an award unless there was absolutely no evidence to support it."). "[E]very intentional tort invokes a species of bad faith that entitles a person wronged to recover the expenses of litigation including attorney fees." *Tyler v. Lincoln*, 272 Ga. 118, 121 (2000) (citation omitted). Because Thornton Storage's claim for trespass remains, so too does its claim for attorney's fees.

## IV.    Conclusion

For the reasons set forth above, Ready Mix's Motion to Exclude the Testimony of Jesse Cole [Doc. 42] is GRANTED, Ready Mix's Motion to Exclude the Testimonies of Blake Lemcke and Charles Barnes [Doc. 43] is GRANTED, and Ready Mix's Motion for Summary Judgment [Doc. 44] is DENIED.

SO ORDERED, this  23rd   day of January, 2025.

THOMAS W. THRASH, JR.
United States District Judge

27